ALBERT ARMSTRONG v. THE STATE.

CRIMINAL LAW. *Charge of the Court. Not erroneous when.* The Court below cannot be put in error in a criminal case by hypercriticism of the language used in a charge to the jury, where no request for further instruction has been made by the defendant, if that language embodies a sound though general exposition of the law on the particular subject, and this court can see that a fuller exposition could have been of no service to defendant.

FROM SHELBY.

Appeal in error from the Criminal Court of Shelby County.   J. E. R. RAY, J.

T. H. LOGWOOD for Armstrong.

ATTORNEY-GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

The plaintiff in error was indicted and convicted of grand larceny, and has appealed in error from the judgment rendered in accordance with the verdict.

The prosecutor on returning home one night with a friend, about eleven o'clock heard a noise in the house, and saw some persons running from the back of the house with bundles.   It was too dark to distinguish whether the persons were black or white, but he could tell that there were four, he says, by the four white sacks or bundles they had.   His friend testifies that there were more than one person—how many more he could not say.

Armstrong *v.* The State.

The prisoner was with three other persons taken into custody that night, and some of the articles stolen were found in his possession.

Two of the persons arrested for the same offense were introduced as witnesses by the defendant. The story of the witnesses was that one of them had invited the others to come to his house that night, by a message that he had "rations" for them. This person lived in the "old field" in which was also the residence of the prosecutor, at a distance of about a quarter of a mile. He testifies that after the defendant and the other two had come to his house, all four started across the field; that defendant and one of them stopped in the old field; that witness and the other, naming him, went into the house, while defendant and his companion "staid outside."

The other witness, who was the person alleged to have remained outside with the defendant, swears that he and the defendant remained at the house of the other witness until the latter and his associate went to the prosecutor's house and returned with the bags, and gave them one, the contents of which were afterward divided, defendant taking as his share one of the articles found in his possession the same night.

It will be seen that the stealing is distinctly proven, and some of the articles stolen were recently thereafter found in the defendant's possession.

The testimony of the prosecutor goes to show that all four of the parties were actually engaged in stealing, and the testimony of the defendant's witness, who admits his own guilt, is that the defendant went with

them across the old field and "staid outside" while he and his active colleague went in.

The exact location of the *locus standi* is not defined. We concur with the jury in thinking that there was sufficient evidence of the defendant's presence at the taking, or near enough outside of the house, to be an aider and abettor. And, clearly, it is not a case where the court is called upon to interpose between the prisoner and the jury for the protection of possible innocence.

Many exceptions are taken to the charge of the judge, but most of them are not so much to what the judge said, as to what it is supposed he ought to have said. Thus, the court said that grand larceny was the felonious taking and carrying away the personal goods of another, etc., and the error assigned is that he should have told the jury that the felonious intent must exist at the time of the taking. So it is said, that the court erred in merely telling the jury that the fact that some of the witnesses were indicted for the same offense would go to their credibility, whereas he ought to have explained how far proof of a fact thus deposed to by other witnesses might be looked to in estimating the credit to be given to the testimony of those whose credibility was thus affected. So it is suggested the subject of aiders and abettors and accessories before the fact are so commingled, that it was calculated to mislead the jury. But it is precisely in such cases, where the language used conveys the correct instruction, though not so

Armstrong *v.* The State.

fully as it might be, that the defendant is required to demand more complete instruction.

The court below cannot be put in error by hyper-criticism of the language used, if that language embodies a sound though general exposition of the law on that particular subject, and the court can see that a fuller exposition could do the defendant no good.

The charge in this case, taking it altogether, is unquestionable as far as it goes, and the failure to go into greater detail did not most certainly prejudice the defendant. The least said the better for him. A fuller exposition would have been given if it had been deemed advisable by the prisoner's counsel to ask for it. A special instruction was asked and given upon the hypothesis to which the testimony of one or two of the defendant's witnesses pointed, that the prisoner was neither present at the taking, nor near enough to have aided or abetted in the larceny, but afterward received the goods. This instruction covers the defense of an *alibi*, upon which the prisoner's able counsel has rested his strongest argument.

There is no error in the judgment, and it must be affirmed.